IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JULIO F. DEL TORO-PACHECO,

Plaintiff

v.

MIGUEL A. PEREIRA, ET AL

Defendants

CIVIL 08-1133 (FAB) (JA)

OPINION AND ORDER

I.   INTRODUCTION

This matter is before the court on a motion to dismiss filed by defendants Roberto Izquierdo-Ocasio ("Izquierdo-Ocasio") and Miguel A. Pereira ("Pereira") on April 2, 2008. (Docket No. 7.) The plaintiff Julio F. del Toro-Pacheco ("del Toro") filed a motion in opposition on April 16, 2008. (Docket No. 9.)

Del Toro is a former correctional officer with the Puerto Rico Department of Correction and Rehabilitation ("ACR"). He alleges he was terminated due to his political affiliation in violation of the constitutions and laws of the United States and Puerto Rico. Defendants move to dismiss on the following grounds: first, the claims are time-barred; second, plaintiff failed to state claims upon which relief can be granted pursuant to Rule 12(b)(6); and finally, on the ground that they are protected from liability by the Eleventh Amendment's sovereign immunity as well as the doctrine of qualified immunity. For the following reasons, defendants' motion to dismiss is GRANTED IN PART AND DENIED IN PART.

CIVIL 08-1133 (FAB) (JA)                        2

## II.  RULE 12(b)(6) LEGAL STANDARD

Under Rule 12(b)(6), a litigant is permitted to move to dismiss an action if the complaint fails "to state a claim upon which relief can be granted. . . ." Fed. R. Civ. P. 12(b)(6).  However, a complaint need only set out a short and plain generalized statement of the claim from which the defendant will be able to frame a responsive pleading. Fed. R. Civ. P. 8(a)(2); Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, F.S.B., 958 F.2d 15, 17 (1st Cir. 1992) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)); Cruz v. Puerto Rico, 558 F. Supp. 2d 165,180 (D.P.R. 2007).  Moreover, the court must treat all allegations in the complaint as true and draw all reasonable inferences therefrom in favor of the plaintiff. Perry v. New England Bus. Serv., Inc., 347 F.3d 343, 344 (1st Cir. 2003); Rumford Pharmacy, Inc. v. City of East Providence, 970 F.2d 996, 997 (1st Cir.1992).  Even so, for a plaintiff to survive such a motion, his factual allegations, assuming they are true, must raise a right to relief above a speculative level. Clark v. Boscher, 514 F.3d 107, 112 (1st Cr. 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1959 (2007)).  A vague and conclusory allegation under 42 U.S.C. § 1983 must be dismissed.  United Hous. Found., Inc. v. Forman, 421 U.S. 837, 860 & n.27  (1975); see Torres Ocasio v. Meléndez, 283 F. Supp. 2d 505, 513 (D.P.R. 2003).

CIVIL 08-1133 (FAB) (JA)            3

### III. FACTUAL ALLEGATIONS

Following the standard invoked, the facts in the complaint are assumed true. Plaintiff receives the benefit of all reasonable inferences. However, conclusory allegations will be disregarded.

Plaintiff was employed as a correctional officer with the Puerto Rico Department of Correction and Rehabilitation ("ACR") before the November, 2004 elections. His position was not one of trust and confidence and he could not be removed because of his political beliefs. Plaintiff is an active member of the New Progressive Party ("NPP") and publicly expressed his support for the NPP in the November, 2004 elections. The NPP's rival party, the Popular Democratic Party ("PDP"), won the governorship that November. (Docket No. 1, at 7, 10-11.)

Defendant Pereira was appointed by the Governor as Secretary of the Correction and Rehabilitation Administration ("ACR"). Defendant Izquierdo-Ocasio was plaintiff's immediate supervisor and was the director of the Special Arrest Unit at ACR. Plaintiff's political beliefs were at all times known to defendants. When defendants took office they initiated a purge of employees that were politically identified with the NPP. (Id. at 4, 6- 7.)

On March 27, 2006, the wife of one of plaintiff's co-workers was the victim of an alleged sexual assault. Authorities suspected plaintiff and a criminal investigation ensued. (Id. at 7-8.)

CIVIL 08-1133 (FAB) (JA)                4

On June 20, 2006, plaintiff received a letter asking him to appear before ACR's Internal Affairs on June 18, 2006. Since the date had already passed, plaintiff called the Office of Internal Affairs. He was told that since he did not show up for the hearing, the Internal Affairs investigation of him would continue without his testimony. (Id.)

On December 14, 2006, plaintiff received a letter signed by Pereira which informed him of ACR's intention to dismiss him. The reason given was the accusation against plaintiff regarding the alleged sexual assault of March 27, 2006. The letter advised plaintiff of his right to request an administrative hearing, which he then requested. (Id. at 8.)

On December 18, 2006, plaintiff received a letter in which he was called to appear before an official on January 10, 2007. The letter stated that if plaintiff did not appear at the hearing the intended disciplinary action would be confirmed. (Id.)

On January 10, 2007, plaintiff attended the hearing with counsel José F. Avilés Lamberty. Counsel Avilés asked that the hearing be postponed at least 30 days due to the on-going criminal investigation. Plaintiff feared his testimony would be used against him in the criminal investigation. Apparently no other hearing was scheduled. (Id. at 8-9.)

Before dismissing plaintiff, Izquierdo-Ocasio began a systematical persecution and harassment of plaintiff. He told plaintiff that he was going to be dismissed, that

CIVIL 08-1133 (FAB) (JA)                5

the letter of dismissal was already signed by Pereira, and that the only way he could keep his job was if he switched to the PPD. (Id. at 9.)

Izquierdo-Ocasio harassed plaintiff on a daily basis, creating a hostile work environment with the purpose of forcing plaintiff to resign. Izquierdo-Ocasio said to plaintiff, "we have the perfect excuse to dismiss you . . . ." He continued, "I can hold your letter of dismissal which is already signed if you publicly affiliate yourself to the Popular Democratic Party." Finally, he concluded with, "Pereira knows that you filed a claim against us and that you are a member of the NPP. I am the only one that can save you, not even Roselló can." (Id. at 9-10.)

On February 22, 2007, plaintiff received a letter dismissing him from his position with ACR because of the sexual assault charges, which plaintiff asserts the defendants knew were false. Indeed, he was cleared of all charges the following month, in March, 2007. Defendants used the charges as pretext for plaintiff's dismissal, the real reason being his affiliation with the NPP. (Id. at 7, 9.)

After discharging plaintiff, the defendants appointed, retained, or contracted new employees identified with the PPD to perform the duties and responsibilities that were previously performed by plaintiff. At no time was political affiliation a requirement for the position held by plaintiff. (Id. at 10.)

Plaintiff filed a complaint on January 30, 2008, under 42 U.S.C. §§ 1983 and 1988, claiming defendants violated his First, Fifth, and Fourteenth Amendment

CIVIL 08-1133 (FAB) (JA)                6

rights. He claims he was fired for political reasons in violation of the First Amendment and that defendants did not afford him due process in violation of the Fifth and Fourteenth Amendments. In addition, he asks the court assert supplemental jurisdiction for claims arising out of the constitution and laws of Puerto Rico. (Id. at 1, 3-5.)

## IV. ANALYSIS

Defendants argue plaintiff's complaint should be dismissed for the following reasons: (1) it is time-barred; (2) plaintiff failed to state a claim under section 1983, and (3) they are protected from liability due to the Eleventh Amendment's sovereign immunity and doctrine of qualified immunity. Their arguments are addressed in turn.

A. STATUTE OF LIMITATIONS

Before discussing whether plaintiff properly alleged a claim, the court must dispose of a threshold issue. Is the complaint timely? Plaintiff says yes, defendants no. Both sides agree on the length of the period but disagree on its inception. First the length.

Plaintiff brings his action under 42 U.S.C. § 1983. "Because it has no internal statute of limitations, section 1983 claims 'borrow[ ] the appropriate state law governing limitations unless contrary to federal law.'" Marrero-Gutiérrez v. Molina, 491 F.3d 1, 5 (1st Cir. 2007) (quoting Poy v. Boutselis, 352 F.3d 479, 483 (1st Cir.

CIVIL 08-1133 (FAB) (JA)                7

2003)).  Thus, Puerto Rico law governs the length of the statute of limitations period. Guzmán-Rivera v. Rivera-Cruz, 29 F.3d 3, 4-5 (1st Cir. 1994).  It is one year. Centro Médico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005); see P.R. Laws Ann. tit. 31, § 5298(2)(1990).

Federal law governs when the one-year period begins. Marrero-Gutiérrez v. Molina, 491 F.3d at 5; Guzmán-Rivera v. Rivera-Cruz, 29 F.3d at 5.  That period, called the accrual period, will ordinarily begin "when the plaintiff knows, or has reason to know, of the injury on which the action is based." Id.  "A claimant is deemed to "know" or "learn" of a discriminatory act at the time of the act itself and not at the point that the harmful consequences are felt." Id. at 5-6 (citing Chardón v. Fernández, 454 U.S. 6, 8 (1981)).

Defendants argue that the first discriminatory act occurred on or before December 14, 2006.  On that date plaintiff received a letter signed by Pereira informing him of the intention to dismiss him.  If that letter, received outside the accrual period, constituted the first discriminatory act, the action would be time-barred.

Plaintiff argues that the first discriminatory act occurred during February 2007.  On February 22, 2007, plaintiff received a letter signed by Pereira which formally dismissed plaintiff from his position with ACR.

CIVIL 08-1133 (FAB) (JA)                8

In the context of a section 1983 political discrimination claim, the accrual period begins when the adverse employment action actually occurs. Examples include demotion, Gutiérrez v. Molina, 447 F. Supp. 2d 168, 173 (D.P.R. 2006) (accrual period began when plaintiff received letter announcing his demotion), and refusal to hire. Ruiz-Sulsona v. U.P.R., 334 F.3d 157, 159-160 (1st Cir. 2003) (discrete acts like termination, failure to promote, denial of transfer, and refusal to hire initiate accrual period) (quoting AMTRAK v. Morgan, 536 U.S. 101, 114 (2002)).

Here, plaintiff alleges a wrongful termination. He was terminated on February 22, 2007. Because the accrual period is one year, he had until February 22, 2008 to bring an action. He filed his complaint on January 30, 2008, within the actionable one-year period. Thus, his complaint is timely.

B.  FAILURE TO STATE A CLAIM UNDER SECTION 1983

Plaintiff brings a claim under section 1983, which creates a private cause of action for persons who have had their civil rights violated by state actors. 42 U.S.C. § 1983. "There is no heightened pleading standard in civil rights cases." Rosario Rivera v. Aqueduct & Sewer Auth. of P.R., 472 F. Supp. 2d 165, 168 (D.P.R. 2007) (citing Educadores Puertorriquños en Acción v. Hernández, 367 F.3d 61, 66-67 (1st Cir. 2004). Even so, while not held to a higher pleading standard, plaintiff "must plead enough for a necessary inference to be reasonably drawn." Marrero-Gutiérrez

CIVIL 08-1133 (FAB) (JA)                    9

v. Molina, 491 F.3d at 9 (quoting Torres-Viera v. Laboy-Alvarado, 311 F.3d 105, 108 (1st Cir. 2002) (citing Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 164, 167-68 (1993)).

"To state a claim under section 1983, the plaintiff must satisfy two requirements. First, he must identify 'an act or omission undertaken under color of state law.'" Calderón-Garnier v. Sánchez-Ramos, 439 F. Supp. 2d 229, 236 (D.P.R. 2006), aff'd, 506 F.3d 22 (1st Cir. 2007) (quoting Aponte-Torres v. U. P.R., 445 F.3d 50, 55 (1st Cir.2006)). This prong is easily satisfied. "Puerto Rico is considered a state for section 1983 purposes" and the complaint alleges actions attributed to Puerto Rican officials. Calderón-Garnier v. Sánchez-Ramos, 439 F. Supp. 2d at 236 (citing Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev., 421 F.3d 1, 7 (1st Cir. 2005). "Second, the plaintiff must allege he was deprived of a federally secured right." Calderón-Garnier v. Sánchez-Ramos, 439 F. Supp. 2d at 236 (citing Aponte-Torres v. U. P.R., 445 F.3d at 55). As detailed below, the plaintiff satisfies this requirement by alleging he was fired without due process because of his political affiliations.

1. Fourteenth Amendment Due Process

Though the fact is not made explicit in the complaint, the court infers plaintiff was a career employee at ACR. Moreover, defendants do not dispute the point. (See Docket No. 7, at 8-10.) Under Puerto Rico law, a career employee has a property

CIVIL 08-1133 (FAB) (JA)              10

interest in his continued employment. Kauffman v. P. R. Tel. Co., 841 F.2d 1169, 1173 (1st Cir. 1988); Soto González v. Rey Hernández, 310 F. Supp. 2d 418, 425 (D.P.R. 2004). As such, plaintiff had a property interest in his continued employment and his termination required procedural due process. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538-540 (1985).

Defendants argue the due process claim should be dismissed because plaintiff received ample process. (Docket No. 7, at 8-12.) "[T]o establish a procedural due process claim under section 1983, a plaintiff 'must allege first that [he] has a property interest as defined by state law and, second, that the defendants, acting under color of state law, deprived [him] of that property interest without constitutionally adequate process.'" Marrero-Gutiérrez v. Molina, 491 F.3d at 8 (quoting PFZ Props., Inc. v. Rodríguez, 928 F.2d 28, 30 (1st Cir. 1991)).

As defendants point out, due process requires "that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" Cleveland Bd. of Educ. v. Loudermill, 470 U.S. at 542 (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950)). "The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. at 546.

CIVIL 08-1133 (FAB) (JA)              11

Defendants cite various incidents as evidence plaintiff received sufficient process. (Docket No. 7, at 1.) They contend plaintiff was notified of the reasons for his termination and was given a pre-termination hearing at which he had the opportunity to be accompanied by his attorney. (Id.)

Plaintiff's complaint is confusing. He first alleges that he was not afforded a hearing. (Docket No. 1, at 4.) Further on he admits he did attend a hearing, accompanied by his attorney, but contends it was insufficient. Apparently he did not testify at the hearing because he feared he might incriminate himself. (Id. at 8.) His attorney thus asked for an extension of 30 days. (Id. at 8-9.) In his brief in opposition to the motion to dismiss, plaintiff clarifies the language in his complaint by stating the key words: "Plaintiff was never given [an] opportunity to present his side of the story." (Docket No. 9, at 11.)

The court, drawing reasonable inferences in favor of the plaintiff, concludes that plaintiff, because of fears of incriminating himself, never had an opportunity to be heard. Thus, plaintiff has stated a procedural due process claim. Accordingly, the claim will survive defendants' motion to dismiss.

2.  First Amendment Political Discrimination

Defendants claim that plaintiff's political discrimination claim should be dismissed because plaintiff has failed to state a prima facie case. The First Amendment protects non-policymaking public employees from adverse employment

CIVIL 08-1133 (FAB) (JA)                12

actions based on their political opinions. See Rutan v. Republican Party of Ill., 497 U.S. 62, 75-76 (1990); Padilla-García v. Guillermo Rodríguez, 212 F.3d 69, 74 (1st Cir. 2000).  To establish a prima facie case, a plaintiff must show that party affiliation was a substantial or motivating factor behind a challenged employment action.  See Padilla-García v. Guillermo Rodríguez, 212 F.3d at 74; Angulo-Álvarez v. Aponte de la Torre, 170 F.3d 246, 249 (1st Cir.1999).

Plaintiff alleges that defendant Pereira directly or using subordinates harassed plaintiff.  To quote his complaint, Pereira played a role in his being told "that because of his loyalty to the New Progressive Party he was going to be dismissed from his position and that under no circumstance the Correctional Administration was going to keep employees who were not politically loyal to the Popular Democratic Party."  (Docket No. 1, at 12.)  The facts alleged show that party affiliation was a substantial factor behind plaintiff's termination.  Thus, the political discrimination claim against Pereira survives this motion to dismiss.

Plaintiff alleges that defendant Izquierdo-Ocasio told him the only way plaintiff could keep his job was if he switched to the Popular Democratic Party.  (Docket No. 1, at 13.)  Plaintiff also alleges that Izqueirdo-Ocasio told plaintiff, "We have the perfect excuse to dismiss you . . . I can hold your letter of dismissal which is already signed if you publicly affiliate yourself to the Popular Democratic Party." (Id.)  The facts alleged clearly illustrate that party affiliation was a substantial or motivating

CIVIL 08-1133 (FAB) (JA)                    13

factor behind his termination. Thus, the political discrimination claim against Izquierdo-Ocasio survives this motion to dismiss.

    3. Fifth Amendment Due Process

Defendants point out the Fifth Amendment applies only to the federal government, not states or individuals. (Docket No. 7, at 17.) Plaintiff concedes the point in response. (Docket No. 9, at 25.) Indeed, the Fifth Amendment to the United States Constitution applies to actions taken by the federal government, not the states. Gutiérrez v. Molina, 447 F. Supp. 2d at 176. Plaintiff does not allege any claims against the federal government. Accordingly, the court will dismiss plaintiff's Fifth Amendment claim.

    4. Fourteenth Amendment Equal Protection

Defendants argue the equal protection claim is encompassed in plaintiff's First Amendment claim. (Docket No. 7, at 17-18.) Again, plaintiff concedes the point. (Docket No. 9, at 25.) "Plaintiff [Toro-Pacheco's equal protection claim parallels the facts of his political discrimination claim[;]" analyzing both would be redundant. Gutierrez v. Molina, 447 F. Supp. 2d at 176. Thus, the court will proceed with the political discrimination claim and dismiss Plaintiff's Equal Protection claim.

C. ELEVENTH AMENDMENT IMMUNITY

Defendants argue the Eleventh Amendment bars claims against them in their official capacity. (Docket No. 7 at 18-20.) They contend that Puerto Rico's Eleventh

CIVIL 08-1133 (FAB) (JA)                        14

Amendment immunity extends to them as state officials. (Id.)  Defendants are correct that Puerto Rico enjoys Eleventh Amendment immunity. See De León López v. Corporación Insular de Seguros, 931 F.2d 116, 121 (1st Cir.1991); Torres Ocasio v. Meléndez,, 283 F. Supp. 2d at 511.  However, they overstate the extension of that immunity to themselves.

In suits against state officials, the case law under the Eleventh Amendment draws a key distinction depending on the remedy sought. When suing a state official in his official capacity, a plaintiff's only remedy is prospective declaratory and injunctive relief. Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev., 421 F.3d at 7; García-Rubiera v. Flores-Galarza, 516 F. Supp. 2d 180, 190 (D.P.R. 2007). The Eleventh Amendment bars section 1983 actions for damages against a state official in his official capacity. Martínez-Rivera v. Sánchez-Ramos, 570 F. Supp. 2d 247, 251 n.1 (D.P.R. 2008) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989)). The rationale behind the rule begins with the premise that a monetary judgment against a state official for actions undertaken in his official capacity will deprive the state treasury of funds.  Allowing a federal hand to dip into state coffers would undermine the state's sovereign immunity. See Edelman v Jordan, 415 U.S. 651, 663 (1974); Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct and Sewer Authority, 991 F.2d 935, 938-939 (1st Cir. 1993).

CIVIL 08-1133 (FAB) (JA)                    15


A plaintiff suing a state official in his personal or individual capacity can recover both damages and injunctive relief. Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev., 421 F.3d at 7; Martínez-Rivera v. Sánchez-Ramos, 570 F. Supp. 2d at 254. Thus the key question is, what remedy does the plaintiff seek? Generally, if a plaintiff seeks damages he must sue the official in the official's personal or individual capacity. See Martínez-Rivera v. Sánchez-Ramos, 570 F. Supp. 2d at 253-254. However, in so doing the plaintiff will be limited to collecting against the personal assets of the official. See Kentucky v. Graham, 473 U.S. 159, 167-68 (1985); Pérez v. Rodríguez Bou, 575 F.2d 21, 24 (1st Cir. 1978); Sánchez v. Pereira-Castillo, 573 F. Supp. 2d 474, 483 (D.P.R. 2008).

Here, plaintiff is suing defendants in both their official capacity and in their personal capacity as individuals. (Docket No. 1, at 6, 12.) He is seeking prospective injunctive relief in the form of reinstatement and compensatory damages. (Id. at 2.)

Defendants argue that as state officials, they are, for Eleventh Amendment purposes, government instrumentalities entitled to the same protections afforded Puerto Rico. The "government instrumentalities" argument is usually reserved for state entities, not officials. See, e.g., Fresenius Med. Care Cardiovascular Resources, Inc. v. P.R. & the Caribbean Cardiovascular Ctr. Corp., 322 F.3d 56, 61-62 (1st Cir. 2003); Torres-Santiago v. Alcaraz-Emmanuelli, 553 F. Supp. 2d 75, 81-82 (D.P.R. 2008). It is an interesting idea. Unfortunately the "state official as instrumentality"

CIVIL 08-1133 (FAB) (JA)                    16

argument is given cursory treatment in defendants' brief. As such, the court will not explore the idea beyond the paragraph thus devoted.

The party asserting Eleventh Amendment immunity has the burden of proving it. Fresenius Med. Care Cardiovascular Resources, Inc. v. P.R. & Caribbean Cardiovascular Ctr. Corp., 322 F.3d at 70; Wojcik v. Mass. State Lottery Comm'n, 300 F.3d 92, 99 (1st Cir. 2002). Defendants have failed to meet that burden.

Moreover, "to establish personal liability in a section 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." Martínez-Rivera v. Sánchez-Ramos, 570 F. Supp. 2d at 254 (quotng Kentucky v. Graham, 473 U.S. at 166). Plaintiff clearly alleges as much. Thus, insofar as the claims are against defendants in their personal capacity, a claim for damages is permissible, albeit only against defendants' personal assets. Insofar as the claims are against defendants in their official capacity, the remedy is limited to injunctive relief. Either way, plaintiff can proceed against defendants.

D. QUALIFIED IMMUNITY

Defendants argue that plaintiff's section 1983 claims are barred by the doctrine of qualified immunity. The doctrine of qualified immunity provides a safe harbor for public officials performing discretionary functions acting under the color of state law who would otherwise be liable under section 1983 for infringing the constitutional rights of private parties. See Anderson v. Creighton, 483 U.S. 635,

CIVIL 08-1133 (FAB) (JA)                17

638 (1987); Rosario Rivera v. Aqueduct & Sewer Auth. of P.R., 472 F. Supp. 2d at 171-72.

Claims of qualified immunity are assessed under a three-part test. Riverdale Mills Corp. v. Pimpare, 392 F.3d 55, 59-60 (1st Cir.2004). First, the court determines whether the facts alleged, taken in the light most favorable to the plaintiff, amount to a violation of a constitutional right. Id. at 61. Second, the court determines whether the constitutional right was clearly established at the time of the alleged violation. Id. at 65. "For a right to have been clearly established, [as required to overcome qualified immunity defense to section 1983 claim,] '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Robinson v. City & County of Denver, 39 F. Supp. 2d 1257, 1266 (D. Colo. 1999) (quoting Anderson v. Creighton, 483 U.S. at 640). Finally, the court determines whether a reasonable official, similarly situated, would understand that his or her conduct violated that clearly established right. Riverdale Mills Corp. v. Pimpare, 392 F.3d at 61.

Plaintiff raised sufficient allegations to defeat the qualified immunity defense at this stage of the pleadings. First, he alleged facts that, taken in the light most favorable to him, amount to a violation of his First and Fourteenth Amendment rights. Second, his claims come under clearly established rights, specifically the rights under section 1983 to recover for constitutional freedoms from political

CIVIL 08-1133 (FAB) (JA)                         18

discrimination and the right to Procedural Due Process. Finally, a reasonable official, similarly situated, would clearly understand his conduct violated plaintiff's civil rights. Defendants are not entitled to qualified immunity.

### E. CLAIMS UNDER PUERTO RICAN LAW

Defendants move to dismiss plaintiff's claim derived from Puerto Rico Law 100. (Docket No. 7, at 22-23.) Plaintiff does not object. (Docket No. 9, at 25.) Accordingly, that claim is dismissed. The court will retain jurisdiction over the other Puerto Rico law claims.

### V. CONCLUSION

For the reasons set forth above, the defendants' motion to dismiss is GRANTED IN PART AND DENIED IN PART. The Equal Protection, Fifth Amendment, and Puerto Rico Law 100 causes of action are dismissed with prejudice. The motion to dismiss is otherwise denied.

At San Juan, Puerto Rico, this 21st day of November, 2008.

S/ JUSTO ARENAS
Chief United States Magistrate Judge