IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JULIO F. DEL TORO-PACHECO,

Plaintiff

v.

MIGUEL A. PEREIRA-CASTILLO,
Secretary of Correction and
Rehabilitation Administration,
ROBERTO IZQUIERDO-OCASIO,
Director of Special Arrest Unit,

Defendants

CIVIL 08-1133 (FAB) (JA)

## OPINION AND ORDER

This matter is before me on a motion for summary judgment filed by defendants Roberto Izquierdo-Ocasio (Izquierdo-Ocasio) and Miguel A. Pereira (Pereira) on June 30, 2009.  (Docket No. 28.)  Plaintiff Julio F. del Toro-Pacheco (del Toro) filed a motion in opposition on July 31, 2009 (Docket No. 33) to which defendants replied on August 14, 2009.  (Docket No. 40.)  For the reasons set forth below defendants' motion for summary judgment is GRANTED.

## I.  FACTUAL BACKGROUND

On December 20, 1993, plaintiff started to work for the Department of Corrections and Rehabilitation ("DCR"), and  in 1996 plaintiff became part of the escort assigned to protect dignitaries within the DCR.  In 2000, plaintiff became part of the Special Arrest Unit ("SAU") of the DCR.  (Docket No. 31-2, Docket No. 36, at 5, ¶ 2 & Docket No. 41, at 3, ¶ 2.)

CIVIL 08-1133 (FAB) (JA)                    2

Defendant Pereira was appointed by the Governor as Secretary of the DCR. (Docket No. 1, at 6, ¶ 31 & Docket No. 13, at 4, ¶ 31.)  Defendant Izquierdo-Ocasio was plaintiff's immediate supervisor from 2000 to 2007 and was also the Director of the SAU at the DCR.  (Docket No. 1, at 6, ¶ 31, Docket No. 13, at 4, ¶ 31, Docket No. 36, at 5, ¶ 3 & Docket No. 41, at 3, ¶ 3.)

On March 27, 2006, the wife of one of plaintiff's friends was the victim of an alleged sexual assault.  Authorities suspected plaintiff was the assailant after the victim filed a formal criminal complaint before the Puerto Rico Police Department against him.  (Docket Nos. 31-3 & 31-4.)

On March 29, 2006, after finding out of the criminal complaint filed against plaintiff, defendant Izquierdo-Ocasio notified defendant Pereira.  (Docket No. 31-7.)  After defendant Pereira was informed of the criminal complaint that was filed against plaintiff, an internal investigation ensued.  (Docket No. 27, at 4, ¶ 15 & Docket No. 36, at 2, ¶ 15.)

On February 22, 2007, after the DCR conducted its investigation, defendant Pereira notified plaintiff of the agency's intention to discharge him.  (Docket No. 27, at 7, ¶ 27, Docket No. 31-12 & Docket No. 36, at 3, ¶ 27.)  The notification explained to plaintiff the charges that were filed against him.  (Docket No. 27, at 7, ¶ 28, Docket No. 31-12 & Docket No. 36, at 3, ¶ 28), and the statutes that had been allegedly breached.  (Docket No. 27, at 8, ¶ 29, Docket No. 31-12 & Docket

CIVIL 08-1133 (FAB) (JA)                    3

No. 36, at 3, ¶ 29.)   Plaintiff was informed that if he did not agree with the charges that were being notified against him, he had the right to request an informal administrative hearing.  (Docket No. 27, at 8, ¶ 30, Docket No. 31-12 & Docket No. 36, at 3, ¶ 30.)  Plaintiff was also explained that the purpose of the hearing was to give him the chance to present the necessary evidence before a hearing officer, who would then make recommendations.  Id. Accordingly, plaintiff requested an informal administrative hearing.  (Docket No. 27, at 8, ¶ 31, Docket No. 31-13 & Docket No. 36, at 3, ¶ 31.)  The hearing was held on January 2007. Plaintiff attended the hearing accompanied by his attorney.  (Docket No. 27, at 8, ¶ 32, Docket No. 31-13 & Docket No. 36, at 4, ¶ 32.) However, plaintiff decided not to give his side of the story.  (Docket No. 27, at 8, ¶ 33, Docket No. 31-14 & Docket No. 36, at 4, ¶ 33.)

On January 24, 2007, the agency informed plaintiff that they had decided to discharge him from the DCR.  (Docket No. 27, at 9, ¶ 35, Docket No. 31-16 & Docket No. 36, at 4, ¶ 35.)  Plaintiff then filed an appeal before the Investigative, Procedure and Appellative Commission ("CIPA"), where he challenged the discharge.  (Docket No. 27, at 9, ¶ 36, Docket No. 31-17 & Docket No. 36, at 4, ¶ 36.)

On April 2008, an evidentiary hearing was held at CIPA.  After listening to the evidence submitted by the plaintiff and the agency, CIPA confirmed the

CIVIL 08-1133 (FAB) (JA)                    4

administrative decision discharging plaintiff from the DCR.  (Docket No. 27, at 9, ¶ 37, Docket No. 31-18 & Docket No. 36, at 4, ¶ 37.)

## II.  PROCEDURAL BACKGROUND

On January 30, 2008, plaintiff filed a complaint against defendants pursuant to 28 U.S.C. §§ 1331, 1343(3)(4), 42 U.S.C. § 1983, and the First, Fifth and Fourteenth Amendments to the Constitution of the United States. Plaintiff also brought several claims under the laws of Puerto Rico alleging violations of his rights under Personnel Law of Puerto Rico, P.R. Laws Ann. tit. 3, § 130 et seq., sections 1, 4, 6 and 7 of Article II of the Constitution of the Commonwealth of Puerto Rico, Law No. 382 of 1950, P.R. Laws Ann. tit. 29, §§ 136-138 and Law No. 100 of 1959, as amended, P.R. Laws Ann. tit. 29, § 146.  (Docket No. 1, at 1-3, ¶¶ 1-14.)

On August 22, 2008, and on June 29, 2009, defendants Izquierdo-Ocasio and Pereira respectively filed their answer to plaintiff's complaint.  (Docket Nos. 13 & 25.)  On April 2, 2008, defendants filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Defendants argue that plaintiff's complaint should be dismissed for the following reasons:  (1) it was time-barred; (2) plaintiff failed to state a claim under section 1983, and (3) they were protected from liability under the Eleventh Amendment and qualified immunity. (Docket No. 7.)

CIVIL 08-1133 (FAB) (JA)                    5

On November 21, 2008, I entered an order granting and denying in part defendants' motion to dismiss.  I held that plaintiff's complaint was not time barred; that plaintiff did not fail to state a claim under section 1983 and that defendants were not entitled to either qualified or the Eleventh Amendment immunity. Also, plaintiff's Equal Protection, Fifth Amendment, and Puerto Rico Law No. 100 claims were dismissed with prejudice. (Docket No. 23.)

On June 30, 2009, defendants filed a motion for summary judgment and memorandum of law in support.  Defendants argue that plaintiff (a) failed to state a cause of action under 42 U.S.C. § 1983; (b) failed to establish a *prima facie* case of political discrimination; and (c) that since he failed to allege any cause of action under federal law, the claims brought forth under supplemental jurisdiction should also be dismissed.  Also, in the alternative, defendants claim that they would be entitled to qualified immunity if the court were to find that plaintiff's rights have been violated.  (Docket No. 28.)

On August 4, 2009, plaintiff filed his opposition to summary judgment. Plaintiff claims that he has a valid cause of action since he has proffered sufficient evidence that shows that defendants intentionally and under color of authority, personally and/or by means of other officials acted to deprive him of his rights under the First and Fourteenth Amendments, and under 42 U.S.C. § 1983. Plaintiff also states that defendants are not entitled to qualified immunity since the facts

CIVIL 08-1133 (FAB) (JA)                    6

presented in the complaint demonstrate that they acted maliciously and intentionally.  (Docket No. 35.)

On August 14, 2009, defendants replied claiming that plaintiff did not meet the burden of showing there were genuine issues in controversy that were trial worthy. Defendants argue that plaintiff only objected to their statements of uncontested facts for evidentiary reasons and/or on unsupported grounds. (Docket No. 40.)

III.  STANDARD OF REVIEW

A.  Summary Judgement

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The intention of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).  "Once the moving party has properly supported [its] motion for summary judgment, the burden shifts to the nonmoving party, with respect to each issue on which [it] has the burden of proof, to demonstrate that a trier of fact reasonably could find in [its] favor." Santiago-

CIVIL 08-1133 (FAB) (JA)                    7

Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting

DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997)).

      "[T]he mere existence of *some* alleged factual dispute between the parties

will not defeat an otherwise properly supported motion for summary judgment;

the requirement is that there be no *genuine* issue of *material* fact."  Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); see also Carrol v. Xerox Corp.,

294 F.3d 231, 236-37 (1st Cir. 2002) (quoting J. Geils Band Employee Benefit

Plan v. Smith Barney Shearson. Inc., 76 F.3d 1245, 1251 (1st Cir. 1996))

("'[N]either conclusory allegations [nor] improbable inferences' are sufficient to

defeat summary judgment.").  The nonmoving party must produce "specific facts

showing that there is a genuine issue for trial."  Matsushita Elec. Indus. Co. v.

Zenith Radio Corp., 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)); see also

López Carrasquillo v. Rubianes, 230 F.3d 409, 413 (1st Cir. 2000).

      "A genuine issue exists when there is evidence sufficient to support rational

resolution of the point in favor of either party."  Nereida González v. Tirado

Delgado, 990 F.2d 701, 703 (1st Cir. 1993) (citing Anderson v. Liberty Lobby,

Inc., 477 U.S. at 248; United States v. One Parcel of Real Prop., 960 F.2d 200,

204 (1st Cir. 1992)).  "In this context, 'genuine' means that the evidence about

the fact is such that a reasonable jury could resolve the point in favor of the

CIVIL 08-1133 (FAB) (JA)                    8

nonmoving party. . . . "  Burke v. Town of Walpole, 405 F.3d 66, 75 (1st Cir.

2005) (quoting United States v. One Parcel of Real Prop., 960 F.2d at 204).

Rule 56(e) "requires the nonmoving party to go beyond the pleadings and

by her own affidavits, or by 'depositions, answers to interrogatories, and

admissions on file,' designate 'specific facts showing that there is a genuine issue

for trial.'"  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  However, a

moving party "may move for summary judgment 'with or without supporting

affidavits.'"  Id. at 323 (quoting Rules 56(a) and (b)).  "The evidence of the non-

movant is to be believed, and all justifiable inferences are to be drawn in his

favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 255 (citing Adickes v. S. H.

Kress & Co., 398 U.S. 144, 158-59 (1970)); see also Patterson v. Patterson, 306

F.3d 1156, 1157 (1st Cir. 2002) (quoting Griggs-Ryan v. Smith, 904 F.2d 112,

115 (1st Cir. 1990)) ("[the court] must view the entire record in the light most

hospitable to the party opposing summary judgment, indulging all reasonable

inferences in that party's favor.").

### B.  Puerto Rico Local Rule 56

In the District of Puerto Rico, Local Rule 56(b), previously Local Rule 311

(12), imposes additional requirements on the party filing for summary judgment

as well as the party opposing the motion.  A motion for summary judgment has

to be accompanied by "a separate, short, and concise statement of material facts,

CIVIL 08-1133 (FAB) (JA)                    9

set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried.   Each fact asserted in the statement shall be supported by a record citation as required by subsection (e) of this rule."   Local Rules of the United States District Court for the District of Puerto Rico, Local Rule 56(b) (2004).  When filing a motion in opposition, the opposing party must include a separate, short, and concise statement admitting, denying or qualifying each fact set out by the moving party.  Local Rules 56(c); see Morales v. A.C. Orssleff's EFTF, 246 F.3d 32, 33 (1st Cir. 2001); Ruiz Rivera v. Riley, 209 F.3d 24, 27-28 (1st Cir. 2000); Domínguez v. Eli Lilly & Co., 958 F. Supp. 721, 727 (D.P.R. 1997); see also Corrada Betances v. Sea-Land Serv., Inc., 248 F.3d 40, 43 (1st Cir. 2001).

These facts must be supported by specific reference to the record, thereby pointing out to the court any genuine issues of material fact and eliminating the problem of the court having "to ferret through the Record." Domínguez v. Eli Lilly & Co., 958 F. Supp. at 727; see Carmona Ríos v. Aramark Corp., 139 F. Supp. 2d 210, 214-15 (D.P.R. 2001) (quoting Stepanischen v. Merch. Despatch Transp. Corp., 722 F.2d 922, 930-31 (1st Cir. 1983)); Velázquez Casillas v. Forest Lab., Inc., 90 F. Supp. 2d 161, 163 (D.P.R. 2000).  Any statement of fact provided by any party which is not supported by citation to the record may be disregarded by the court, and any supported statement which is not properly presented by the

CIVIL 08-1133 (FAB) (JA)                    10

other party shall be deemed admitted.  <u>See</u> Local Rule 56(e).  Failure to comply with this rule may result, where appropriate, in judgment in favor of the opposing party.  <u>Morales v. A.C. Orssleff's EFTF</u>, 246 F.3d at 33; <u>Stepanischen v. Merch. Despatch Transp. Corp.</u>, 722 F.2d at 932.

Defendants submitted their statement of uncontested material facts on June 30, 2009. (Docket No. 27), and on July 31, 2009, plaintiff submitted its own statement of uncontested facts.  (Docket No. 33-3.)  Defendants filed a reply statement on August 14, 2009.  (Docket No. 41.)  Thus, parties have complied with the district court's local anti-ferret rule.

IV.  DISCUSSION

A.  Evidentiary Issues

Plaintiff has countered several of defendants statements of uncontested facts  on the grounds that the documents supporting said statements:  (1) have not been authenticated as required by Rule 56(e) of the Federal Rules of Civil Procedure and Rule 901(a) of the Federal Rules of Evidence; (2) the documents contain hearsay statements pursuant to Federal Rule of Evidence 802; and (3) that defendant Izquierdo-Ocasio's sworn statement is not properly authenticated since he lacks competence to testify as required by Federal Rule of Civil Procedure 56 (e)(1).  (Docket No. 35, at 1-2, ¶¶ 2-4.)

CIVIL 08-1133 (FAB) (JA)                    11

Defendants on the other hand request that plaintiff's unsworn statement submitted in support of the response to defendants' motion for summary judgment be stricken from the record since it contains conclusory allegations. (Docket No. 40, at 8-9, ¶¶ 20-21.)   Defendants also argue that plaintiff has waived any objection regarding defendants' statement of uncontested facts since he has admitted them in the alternative.  (Docket No. 40, at 9, ¶ 22.)

1.  Plaintiff requests that the following exhibits be stricken:

   a.    Plaintiff's deposition transcript (Docket No. 31,
         Exhibits 1-2, 4-5, 7, 12-14, 16-17, and 19-23)

Recently this court reaffirmed the long standing principle which requires "that '[d]ocuments supporting or opposing summary judgment must be properly authenticated." Rivera Maldonado v. Hosp. Alejandro Otero López, 614 F. Supp. 2d 181, 185 n.1 (D.P.R. 2009) (quoting Carmona v. Toledo, 215 F.3d 124, 131 (1st Cir. 2000) (citing Fed. R. Civ. P. Rule 56(e))).  The court emphasized that "[t]he failure to authenticate a document properly precludes its consideration on a motion for summary judgment." Id. (quoting Robinson v. Bodoff, 355 F. Supp. 2d 578, 582 (D. Mass. 2005)).  In United States v. Ventura-Meléndez, 275 F.3d 9, 14 (1st Cir. 2001) the court stated that Rule 902 of the Federal Rules of Evidence provides, in relevant part, for the self-authentication of:

   A document bearing a seal purporting to be that of the
   United States, or of any State, district, Commonwealth,
   territory, or insular possession thereof, or the Panama

CIVIL 08-1133 (FAB) (JA)                    12

> Canal Zone, or the Trust Territory of the Pacific Islands, or of a political subdivision, department, officer, or agency thereof, and a signature purporting to be an attestation or execution.

United States v. Ventura-Meléndez, 275 F.3d at 14.

On the other hand, Rule 56 of the Federal Rules of Civil Procedure does not provide that an affidavit of authentication is required as to pleadings, depositions, answer to interrogatories and admissions. Fed. R. Civ. P. 56. On the contrary, the rule states that a party may "move, with or without supporting affidavits, for a summary judgment on all or any part of the claim." Fed. R. Civ. P. 56(a). However, Rule 30(f)(1) deals with authentication of depositions by certification of the officer taking the deposition. The rule states that "[t]he officer must certify in writing that the witness was duly sworn and that the deposition accurately records the witness testimony." Fed. R. Civ. P. 30(f)(1).

Defendants' Exhibits 1-2, 4-5, 7, 12-14, 16-17, and 19-23, which contain excerpts of plaintiff's deposition transcript, were properly authenticated since the officer taking the deposition certified that the plaintiff was duly sworn and that the deposition accurately records his testimony. (Docket No. 40-2.) Besides, plaintiff made use of the deposition in his opposition to defendants' motion for summary judgment in order to support the statement of uncontested facts. (Docket No. 33-3.)

CIVIL 08-1133 (FAB) (JA)                    13

          b.    Investigative Reports (Docket No. 31, Exhibits 6 and 8-10)

Exhibits 6 and 8-10, regarding the investigative interviews conducted by several agents, are not self-authenticated since (1) the documents do not bear the proper seal of the Department of Corrections and Rehabilitation, and (2) because their contents were not properly attested since they were not signed by officials authorized to authenticate.   I find that the aforementioned documents are admissible pursuant to Federal Rule of Evidence 803(8).  I explain.

"Generally, evidence that constitutes hearsay is not admissible at trial." Remington Inv., Inc. v. Quintero & Martínez Co., 961 F. Supp. 344, 351 (D.P.R. 1997).  Rule 803(8) of the Federal Rules of Evidence provides a general exception to the hearsay rule.  The rule states that:

> Public records and reports.  Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report . . . , or (C) in civil actions and proceedings . . . , factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

Fed. R. Evid. 803(8).

CIVIL 08-1133 (FAB) (JA)                    14

Nonetheless, public records such as investigatory reports, may be admissible if they are based on a factual investigation and the report, and any portion that is admitted, is sufficiently trustworthy.  See Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 170 (1998).  "Trustworthiness in this context refers to matters such as whether the evidence is self-authenticating or contemporaneously compiled by a person of adequate skill and experience." Blake v. Pellegrino, 329 F.3d 43, 48 (1st Cir. 2003).  In determining whether an investigative report is trustworthy, a court may consider, among other factors, "(1) the timeliness of the investigation; (2) the investigator's skill or experience; (3) whether a hearing was held; and (4) possible bias when reports are prepared with a view to possible litigation." Beech Aircraft Corp. v. Rainey, 488 U.S. at 167 n.11.

Based on the foregoing, it is clear that the DCR's investigative reports fall under the exception of Rule 803(8) since they were prepared in a timely fashion by public officials during the course of their duties.  Thus, it can be reasonably inferred that they are sufficiently trustworthy and comply with the standards established by the Court in Beech Aircraft.

           c.     Defendant Izquierdo-Ocasio's sworn statement (Exhibit 24)

Plaintiff objects to defendants' statement of uncontested fact number 49 since it is supported by defendant Izquierdo-Ocasio's sworn statement, which

CIVIL 08-1133 (FAB) (JA)                    15

according to plaintiff is not properly authenticated since defendant Izquierdo-Ocasio lacks competence to testify as required by Federal Rule of Civil Procedure 56(e)(1).  (Docket No. 33-3, at 5, ¶ 49.)

Federal Rule of Civil Procedure 56(e)(1) states: "[a] supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(e)(1).  "Additionally, the document 'must concern facts as opposed to conclusions, assumptions, or surmise,' not conclusory allegations."  Celta Agencies, Inc. v. Denizcilksanayi Ve Ticaaret, A.S., 396 F. Supp. 2d 106, 111 (D.P.R. 2005) (quoting Pérez v. Volvo Car Corp., 247 F.3d 303, 316 (1st Cir. 2001), and citing López-Carrasquillo v. Rubianes, 230 F.3d at 414).  Furthermore, "in order to be admissible, the proffered statements must be specific and adequately 'supported with particularized factual information.'"  Celta Agencies, Inc. v. Denizcilksanayi Ve Ticaaret, A.S., 396 F. Supp. 2d at 112 (quoting Perez v. Volvo Car Corp., 247 F.3d at 316.)

Plaintiff's argument is unavailing since it fails to set forth facts that would cast a shadow over the defendant Izquierdo-Ocasio's personal knowledge of the facts, or his competency to testify nor that the statements made would be inadmissible.  In other words, plaintiff does not point out the deficiencies in defendant Izquierdo-Ocasio's sworn statement if any.  In essence, plaintiff claims

CIVIL 08-1133 (FAB) (JA)                16

that defendant's statement is not properly authenticated since he lacks competence to testify as required by Federal Rule of Civil Procedure 56(e)(1). Thus, defendant's statement fully complies with the requirements set out in Rule 56(e) since it was made under oath and sets out facts based on his personal knowledge that would be admissible in evidence.

2. Defendants request that the following exhibit be stricken:

a. Plaintiff's unsworn statement (Docket No. 35, Exhibit 1)

Defendants' request that plaintiff's unsworn statement be stricken from the record since it does not meet the requirements set out in Rule 56 of the Federal Rules of Civil Procedure.  (Docket No. 40, at 8, ¶ 20.)

This court has held that "a party can rely on . . . self-serving affidavits containing relevant information to oppose a motion for summary judgment." Rivera-Santiago v. Abbott Pharm. P.R. Ltd., 609 F. Supp. 2d 167, 174 (D.P.R. 2009) (citing Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d at 53. Nevertheless, "the affidavits must contain specific factual information based on the party's personal knowledge." Id. Thus, "'affidavits submitted in opposition to a motion for summary judgment' that 'merely reiterate allegations made in the complaint, without providing specific factual information made on the basis of personal knowledge' are insufficient." Id.

CIVIL 08-1133 (FAB) (JA)                    17

Although plaintiff's sworn statement is self serving, it provides sufficient specific factual information based on his personal knowledge.  As such, plaintiff's statement shall not be stricken.

3.  Relevancy

Plaintiff objects to defendants' statement of uncontested facts number 47 due to relevancy.  (Docket No. 33-3, at 5, ¶ 47.)  Defendants' statement reads as follows:

> A cursory reading of the complaint number 02-2524 (HL) establishes that Julio del Toro Pacheco did not sue Lt. Roberto Izquierdo Ocasio. The only defendants in that lawsuit were Víctor Rivera, Ana Batalla, Héctor Fontánez, José Fellicier and Ramón Díaz.

(Docket No. 27, at 10, ¶ 47.)

Under Rule 401 "'[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.  In determining if certain relevant evidence must be excluded, the court has considerable discretion.  See Santos v. Sunrise Med., Inc., 351 F.3d 587, 592 (1st Cir. 2003).

Plaintiff essentially claims that defendant knew he was a member of the New Progressive Party (1) because defendant knew that he used to belong to the

CIVIL 08-1133 (FAB) (JA)                    18

escort, a trust position, and (2) because in 2002 he had sued defendant for political discrimination.  (Docket Nos. 31-22 & 31-23. )  Defendant on the other hand claims he was not sued and that the only people sued were Víctor Rivera, Ana Batalla, Héctor Fontánez, José Fellicier and Ramón Díaz.  (Docket No. 27, at 10, ¶ 47.)  Defendant additionally states he did not know of plaintiff's political affiliation until he was summoned and given a copy of the complaint in the present case on February 12, 2008.  (Docket No. 27, at 11, ¶ 49.)  It is clear then that defendant's statement relates to plaintiff's claim since in order to establish a *prima facie* case for political discrimination plaintiff has to prove first that defendants knew about his political affiliations, and second that his political views were the reason for defendants' adverse employment action.  It is unquestionable then that defendants' statement number 47 is relevant pursuant to Rule 401 of the Federal Rules of Evidence.

                    B.  Failure to State a Claim Under Section 1983

        Plaintiff brings a claim under section 1983, which creates a private cause of action for persons who have had their civil rights violated by state actors.  42 U.S.C. § 1983.  "There is no heightened pleading standard in civil rights cases." Rosario Rivera v. Aqueduct & Sewer Auth. of P.R., 472 F. Supp. 2d 165, 168 (D.P.R. 2007).  Even so, plaintiffs "must plead enough for a necessary inference to be reasonably drawn."  Marrero-Gutiérrez v. Molina, 491 F.3d 1, 9  (1st Cir.

CIVIL 08-1133 (FAB) (JA)                    19

2007) (quoting Torres-Viera v. Laboy-Alvarado, 311 F.3d 105, 108 (1st Cir. 2002)).   To state a claim under section 1983, a plaintiff must satisfy two requirements.  "First, he must identify 'an act or omission undertaken under color of state law.'"  Calderón-Garnier v. Sánchez-Ramos, 439 F. Supp. 2d 229, 236 (D.P.R. 2006), aff'd, 506 F.3d 22 (1st Cir. 2007) (quoting Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 55 (1st Cir. 2006)).  This prong is easily satisfied.  "Puerto Rico is considered a state for Section 1983 purposes" and the complaint alleges actions attributed to Puerto Rican officials.  Calderón-Garnier v. Sánchez-Ramos, 439 F. Supp. 2d at 236 (citing Redondo-Borges v. United States Dep't of Hous. & Urban Dev., 421 F.3d 1, 7 (1st Cir. 2005); Aponte-Torres v. Univ. of P.R., 445 F.3d  at 55).  "Second, the plaintiff must allege he was deprived of a federally secured right."  Calderón-Garnier v. Sánchez-Ramos, 439 F. Supp. 2d at 236 (citing Aponte-Torres v. Univ. of P.R., 445 F.3d at 55).

    I previously held that under the standard for a Rule 12(b)(6) motion, plaintiff stated a claim under section 1983.  However, now I must determine if plaintiff can state a claim under the summary judgment standard, which requires the court to indulge in favor of the non-moving party all reasonable inferences arising from such facts as may have been established by affidavit, deposition, or other such reliable method.  For the reasons set forth below, I find that plaintiff fails to state a claim under section 1983.

CIVIL 08-1133 (FAB) (JA)                    20

    1.  Fourteenth Amendment Due Process

    To establish a procedural due process claim under section 1983, a plaintiff "must allege first that it has a property interest as defined by state law and, second, that the defendants, acting under color of state law, deprived it of that property interest without constitutionally adequate process." Marrero-Gutiérrez v. Molina, 491 F.3d at 8 (quoting PFZ Props., Inc. v. Rodríguez, 928 F.2d 28, 30 (1st Cir. 1991)). "In order to establish a constitutionally-protected property interest, a plaintiff must demonstrate that [he] has a legally recognized expectation that [he] will retain [his] position." Santana v. Calderón, 342 F.3d 18, 24 (1st Cir. 2003), cited in González-de-Blasini v. Family Dep't, 377 F.3d 81, 86 (1st Cir. 2004); Marrero-Gutiérrez v. Molina, 491 F.3d at 8.

    Although it has not been made explicit, I infer that plaintiff was a career employee at DCR.  Moreover, defendants do not dispute the point.  (Docket No. 7, at 8-10.)  Under Puerto Rico law, a tenured public employee has a property interest in his continued employment. Kauffman v. P.R. Tel. Co., 841 F.2d 1169, 1173 (1st Cir. 1988); Soto González v. Rey Hernández, 310 F. Supp. 2d 418, 425 (D.P.R. 2004).  As such, plaintiff had a property interest in his continued employment and his termination required procedural due process. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538-40 (1985).

CIVIL 08-1133 (FAB) (JA)                    21


"The Due Process Clause of the Fourteenth Amendment guarantees those public employees who possess a property interest in continued employment the right to notice and a hearing prior to the termination of their employment." Febus-Cruz v. Sauri-Santiago, 2009 WL 2195779, at *6 (D.P.R. July 23, 2009) (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. at 542-44; González-de-Blasini v. Family Dep't, 377 F.3d at 86; Kauffman v. P.R. Tel. Co., 841 F.2d at 1173).  The notice may be oral and/or written and must inform the tenured public employee of the charges against him.  Also it must contain an explanation of the employer's evidence, and the employee must have the opportunity to present his side of the story.  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. at 546.

Defendants argue that plaintiff's claim must be dismissed since he was not deprived of his procedural due process rights.  (Docket No. 28, at 16, ¶ 2.)  I agree.  First, plaintiff's procedural rights were not violated since plaintiff was notified of the statutes that he had apparently violated as well of the charges that were made against him.  Second, plaintiff was informed that if he did not agree with the charges  he could request an informal administrative hearing where he could present the necessary evidence before an officer who would then make recommendations.  Plaintiff requested the hearing and attended the same accompanied by  his attorney.  However, plaintiff decided not to make a statement.  Plaintiff appealed to the CIPA in order to challenge his discharge.

CIVIL 08-1133 (FAB) (JA)                22

After the evidentiary hearing, CIPA confirmed the agency's decision to discharge plaintiff from DCR.  In sum, plaintiff was notified of the charges against him, he was given an explanation of the charges as well as the evidence supporting them, and he was given a hearing.  Furthermore, defendants' request to dismiss the present claim was unopposed by plaintiff.  Plaintiff failed to provide any evidence that would show that his procedural due process rights were violated.  Thus, plaintiff's claim is dismissed since it fails to state a procedural due process claim.

2.  First Amendment Political Discrimination

Defendants claim that plaintiff's political discrimination claim should be dismissed because plaintiff has failed to state a *prima facie* case.  The First Amendment protects non-policymaking public employees from adverse employment actions based on their political opinions.  See Rutan v. Republican Party of Ill., 497 U.S. 62, 75-76 (1990); Padilla-García v. Guillermo Rodríguez, 212 F.3d 69, 74 (1st Cir. 2000).

"To establish a *prima facie* case, the plaintiff must show that (1) the plaintiff and the defendant belong to opposing political affiliations; (2) the defendant has knowledge of the plaintiff's affiliation; (3) a challenged employment action occurred; and (4) political affiliation was a substantial or motivating factor behind the challenged employment action." Febus-Cruz v. Sauri-Santiago, 2009 WL 2195779, at *4 (citing Martínez-Vélez v. Rey-Hernández, 506 F.3d 32, 39 (1st Cir.

CIVIL 08-1133 (FAB) (JA)                    23

2007); Peguero-Moronta v. Santiago, 464 F.3d 29, 48 (1st Cir. 2006)).  Once plaintiff has established a *prima facie* case, "[t]he burden then shifts to the defendant, who must articulate a nondiscriminatory basis for the adverse employment action and establish by a preponderance of the evidence that he would have taken the same employment action regardless of the plaintiff's political affiliation."   Febus-Cruz v. Sauri-Santiago, 2009 WL 2195779, at *4 (citing Padilla-García v. Guillermo Rodríguez, 212 F.3d at 74); Rodríguez-Ríos v. Cordero, 138 F.3d 22, 24 (1st Cir. 1998)).

"Evidence of a highly-charged political environment coupled with the parties' competing political persuasions may be sufficient to show discriminatory animus, especially where a plaintiff was a conspicuous target for political discrimination." Febus-Cruz v. Sauri-Santiago, 2009 WL 2195779, at *4 (citing Rodríguez-Ríos v. Cordero, 138 F.3d at 24); see also Padilla-García v. Guillermo Rodríguez, 212 F.3d at 75-76.  However, "[e]vidence that a plaintiff held a trust position under a previous administration of opposing political affiliation, and that plaintiff is a well-known supporter of a different political party . . . may not suffice to show that a challenged employment action was premised upon political affiliation." Febus-Cruz v. Sauri-Santiago, 2009 WL 2195779, at *4 (citing González-de-Blasini v. Family Dep't, 377 F.3d at 85-86).

CIVIL 08-1133 (FAB) (JA)                    24

Plaintiff has alleged all four elements of a *prima facie* case:  (1) that defendants are members of the PDP while plaintiff is a member of the NPP; (2) that defendants know of plaintiff's party membership; (3) that plaintiff was terminated from his employment; and (4) that defendants terminated  plaintiff because of his political affiliation.  Defendants argue that plaintiff's claims are based on conclusory allegations and unfounded speculation.  Specifically, defendants state two things, first that plaintiff cannot establish a *prima facie* case because they did not know of plaintiff's political affiliation, and second that plaintiff's political affiliation was not a substantial or motivating factor in his termination.  (Docket No. 28, at 7-13.)

Plaintiff relies on the following allegations to establish the second element of his *prima facie* case, that defendants know he is a member of the NPP.  Plaintiff claims that he is an active member of the NPP, and actively participated in the elections of November 2004.  (Docket No. 1, at 7, ¶ 34.)  Also, plaintiff states that when defendants took office they initiated a purge of employees that were politically identified with the NPP, removing them from their positions, harassing them, taking away their responsibilities, duties and functions all under subterfuge discharging or demoting them. (Docket No. 1, at 7, ¶ 34.)  Furthermore, plaintiff argues that before he was dismissed defendant Izquierdo-Ocasio began a systematical persecution and harassment telling him that he was going to be

CIVIL 08-1133 (FAB) (JA)                    25

dismissed and that his letter of dismissal was already signed by defendant Pereira, and that the only way he could keep his job was if he switched to the PDP. (Docket No. 1, at 9, ¶ 43.)   Finally, plaintiff states that after being discharged defendants have appointed, retained and contracted new employees identified with the PDP either as career employees, transitory employees or employees under contract and/or under federal state funded programs to perform the duties and responsibilities that were previously performed by him.  (Docket No. 1, at 10, ¶ 44.)

Plaintiff's assertion that defendants knew that he was affiliated with the NPP and that he was fired because of his political views are conclusory.  The evidence on the record shows that plaintiff (1) did not know defendant Pereira; (2) had never spoken to him; (3) had never spoken about politics with him; (4) had never told him of his political preference; (5)was never told by defendant Pereira to vote for the PDP; and (6) that the only reason he is suing defendant Pereira is because he is the Administrator of the DCR.  (Docket Nos. 31-20 & 31-21.)  Also, the evidence demonstrates that plaintiff was not sure if in fact defendant Izquierdo-Ocasio knew of his political affiliation to the NPP.  Plaintiff admitted that he believed defendant Izquierdo-Ocasio knew he was affiliated to the NPP because he had belonged to the escort, a trust position.  (Docket No. 31-22.)

CIVIL 08-1133 (FAB) (JA)                    26

Plaintiff's belief that defendant Izquirdo-Ocasio knew he was a member of the NPP because he had held a trust position under a previous administration of opposing political affiliation is insufficient to show that a challenged employment action was premised upon political affiliation.  Plaintiff's general allegations do not suffice in order to carry his burden of establishing the element of knowledge. Moreover, assuming that plaintiff was able to establish a *prima facie* case, there is still no evidence in the record that would show plaintiff was terminated because of his political affiliation to the NPP.  On the contrary the evidence demonstrates that plaintiff was discharged as a result of the administrative investigation that ensued after a criminal complaint was presented against him.  It is clear then that plaintiff's discharge was nor discriminatory.   Therefore, plaintiff's claim is dismissed since it fails to state a *prima facie* case for political discrimination.

C.  Qualified Immunity

Drawing on Supreme Court precedent and its own case law, the First Circuit assesses claims of qualified immunity under a three-part test:  "(1) whether plaintiff's allegations, if true, establish a constitutional violation; (2) whether that right was clearly established at the time of the alleged violation; and (3) whether a similarly situated reasonable official would have understood that the challenged action violated the constitutional right at issue." Mihos v. Swift, 358 F.3d 91, 102 (1st Cir. 2004) (citing Suboh v. Dist. Attorney's Office of Suffolk Dist., 298 F.3d

CIVIL 08-1133 (FAB) (JA)                27

81, 90 (1st Cir. 2002)); see also Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982).  In order to overcome a qualified immunity defense, plaintiff must lead the court to answer all three prongs of this test in the affirmative.  Mihos v. Swift, 358 F.3d at 98-99.

Plaintiff failed to overcome the qualified immunity defense since his rights under the First and Fourteenth Amendment have not been violated.  As stated earlier, plaintiff was not able to state a procedural due process claim nor a *prima facie* case for political discrimination.  Seeing that plaintiff's constitutional rights have not been violated, I find there is no necessity for further consideration of the defense of qualified immunity.

D.  Supplemental Jurisdiction Claims

Pursuant to 28 U.S.C. § 1367, a "district court may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3); see Gonzalez-de-Blasini v. Family Dep't, 377 F.3d at 89; Claudio-Gotay v. Becton Dickinson Caribe, Ltd., 375 F.3d 99, 104 (1st Cir. 2004).  Also, it is common for district courts not to exercise supplemental jurisdiction over a plaintiff's state law claims when all of its federal claims have been dismissed.  See Educadores Puertorriqueños v. Rey Hernández, 508 F. Supp. 2d 164, 186 (D.P.R. 2007) (citing McBee v. Delica Co., 417 F.3d 107, [116] (1st Cir. 2005); González-de-Blasini v. Family Dep't, 377 F.3d at 89); Camelio v. Am.

CIVIL 08-1133 (FAB) (JA)                28

Fed'n, 137 F.3d 666, 672 (1st Cir. 1998) (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."); Rodríguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995) ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit . . . will trigger the dismissal without prejudice of any supplemental state-law claims.").

Furthermore, "if the federal claims are properly dismissed, the District Court does not abuse its discretion in declining to exercise supplemental jurisdiction over the state-law claims asserted in the case." Rodríguez Rivas v. Police Dep't of P.R., 483 F. Supp. 2d 137, 140 (D.P.R. 2007) (citing Ramos-Piñero v. Puerto Rico, 453 F.3d 48, 55 (1st Cir. 2006)).  Accordingly, plaintiff will be at the "liberty to bring his unadjudicated claims before the Commonwealth courts." Gonzalez-de-Blasini v. Family Dep't, 377 F.3d at 89.  Having dismissed all of plaintiff's federal claims against defendants, the court will not exercise supplemental jurisdiction. Therefore, the court dismisses without prejudice plaintiffs' supplemental claims.

V.  CONCLUSION

Plaintiff has failed to establish that defendants had knowledge about his political affiliation to the NPP.  Plaintiff also failed to establish that his political affiliation was a substantial or motivating factor in his termination.  Thus, plaintiff

CIVIL 08-1133 (FAB) (JA)                    29

has no First Amendment claim since he failed to state a *prima facie* case for political discrimination.  I also find that plaintiff does not have a Fourteenth Amendment claim since he failed to establish a violation of his procedural due process rights.  Therefore, summary judgment is granted and all federal claims are DISMISSED WITH PREJUDICE. The state law claims are DISMISSED WITHOUT PREJUDICE.  The Clerk is directed to enter judgment accordingly.

At San Juan, Puerto Rico, this 7th day of October, 2009.


S/ JUSTO ARENAS
Chief United States Magistrate Judge